**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

| | | |
|---|---|---|
| NATIONAL CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NIX FRUIT CO., LLC, and KARYN | ) | CIVIL ACTION FILE |
| GURLEY, individually and as personal | ) | |
| representative of the Estate of Clifton Gurley, | ) | NO._____ |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff National Casualty Company (hereinafter "NCC"), by and through the undersigned counsel, and pursuant to 28 U.S.C. §2201(a) and Rule 57 of the Federal Rules of Civil Procedure files this Petition for Declaratory Judgment showing the Court as follows:

## PARTIES AND JURISDICTIONAL ALLEGATIONS

1. NCC is a foreign insurance company organized and existing under the laws of the State of Ohio, with its principal office at 8877 North Gainey Center Drive, Scottsdale, Arizona, 85258.

2. Upon information and belief, Defendant Nix Fruit Co., LLC ("Nix Fruit") is a limited liability company organized under the laws of the State of North Carolina, and all of Nix Fruit's members are citizens of the State of North Carolina.

3. Upon information and belief, Defendant Karyn Gurley is an individual resident citizen of Spartanburg, South Carolina.

4. This Court has original jurisdiction over this action because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum
M0563279.1 14701

of $75,000.00. Accordingly, jurisdiction is predicated on diversity of citizenship and the amount in controversy pursuant to 28 U.S.C. § 1332 and on the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this District.

## THE ACCIDENT AND UNDERLYING LAWSUIT

6. On or about September 22, 2016, Clifton Gurley was tragically killed in a single-vehicle auto accident that occurred on Interstate 95 in Colleton County, South Carolina ("the Accident"). A copy of the police report for the Accident is attached as Exhibit 1.

7. The Accident occurred when the vehicle Clifton Gurley was driving ran off the left side of Interstate 95 and struck a guard rail.

8. Clifton Gurley's vehicle was not hit or otherwise contacted by any other vehicle at any point during the Accident.

9. At the time of the Accident, Clifton Gurley was an employee of Nix Fruit.

10. Clifton Gurley was acting within the course and scope of his employment with Nix Fruit at the time of the Accident.

11. Clifton Gurley was operating a Peterbilt tractor owned by Nix Fruit at the time of the Accident.

12. The 1994 Peterbilt tractor that Clifton Gurley was operating at the time of the Accident was licensed in North Carolina.

13. The 1994 Peterbilt tractor that Clifton Gurley was operating at the time of the Accident was principally garaged in North Carolina.

14. At the time of the Accident, Clifton Gurley was traveling to Nix Fruit's headquarters in Hendersonville, North Carolina.

15. Seeking to recover damages for the Accident, Karyn Gurley filed a lawsuit against "John Doe, an Unknown Driver" styled <u>Karen Gurley, individually and as personal representative of the estate of Clifton Gurley v. John Doe, an Unknown Driver</u>, in the Court of Common Pleas for Colleton County, South Carolina, case no. 2019-cp-15-00732 (the "Underlying Lawsuit"). A copy of the complaint from the Underlying Lawsuit is attached hereto as Exhibit 2.

16. Karyn Gurley's complaint alleges that unknown driver John Doe veered in front of Clifton Gurley's vehicle, which caused Clifton Gurley to lock his brakes, veer to the left, and swerve off the roadway. <u>See</u> Ex. 2, p. 1.

17. Karyn Gurley's complaint does not allege that the vehicle driven by John Doe hit or otherwise made contact with Clifton Gurley's vehicle.

18. None of the individuals who witnessed the Accident stated that the vehicle driven by John Doe hit or otherwise made contact with Clifton Gurley's vehicle.

19. There is no evidence that the vehicle driven by John Doe hit or otherwise made contact with Clifton Gurley's vehicle.

20. Karyn Gurley's complaint states that she seeks a judgment "in excess of $100,000.00 . . . ." <u>See</u> Ex. 2, p. 5.

21. Karyn Gurley served NCC with a copy of the complaint from the Underlying Lawsuit as an insurer that purportedly provides uninsured motorist insurance coverage for the Accident to Clifton Gurley and/or Karyn Gurley.

## THE NCC POLICY

22. NCC issued Commercial Auto Policy No. LTO0027708 (hereinafter "the Policy") to Defendant Nix Fruit, which was in effect at the time of the Accident. A certified copy of the Policy (with premium information redacted) is attached to this Complaint as Exhibit 3. All provisions of the Policy are adopted and incorporated herein by reference.

23. The Policy was issued to Nix Fruit in North Carolina. See Ex. 3, p. 6.

24. Nix Fruit obtained the Policy via its agent, Risk Placement Services, Inc., which is located in Charlotte, North Carolina. See Ex. 3, p. 6.

25. The Policy contains various North Carolina specific forms, endorsements, and notices. See Ex. 3, pp. 11-12, 30-31, 60-68, 81.

26. The 1994 Peterbilt tractor that Clifton Gurley was driving at the time of the Accident appears on the "SCHEDULE OF COVERED AUTOS YOU OWN" attached to the NCC Policy, which states that the tractor was principally garaged in Hendersonville, North Carolina. See Ex. 3, p. 41.

27. The Policy provides uninsured motorist ("UM") insurance coverage under an endorsement titled "NORTH CAROLINA UNINSURED MOTORIST COVERAGE," form no. CA 21 16 10 13. See Ex. 3, p. 64.

28. The Limit Of Insurance available under the Policy's UM coverage is a combined single limit of $85,000. See Ex. 3, p. 64.

29. Nix Fruit accepted a combined single limit of $85,000 in UM coverage under the Policy by completing and executing a form titled "NORTH CAROLINA SELECTION OF UNINSURED/UNDERINSURED MOTORISTS COVERAGE LIMITS." A true and correct copy of that form is attached as Exhibit 4.

30. The North Carolina UM Endorsement attached to the Policy provides, in pertinent part, as follows:

> **A. Coverage**
>
> 1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of:
>
>    a. An "uninsured motor vehicle" because of "bodily injury sustained by the "insured" and caused by an "accident"; and
>
>    b. An "uninsured motor vehicle", as defending in Paragraphs a. and c. of the definition of "uninsured motor vehicle", because of "property damage" caused by an "accident".
>
>    The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".
>
> ****
>
> **F. Additional Definitions**
>
> As used in this endorsement:
>
> 4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":
>
>    a. For which neither a bond or policy nor cash or securities on file with the North Carolina Commissioner of Motor Vehicles provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act.
>
>    b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all bodily injury liability bonds or policies at the time of an "accident" provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act, but their limits are either:

(1) Less than the limits of underinsured motorists coverage applicable to a covered "auto" that the Named Insured owns involved in the "accident";

(2) Less than the limits of this coverage, if a covered "auto" that the Named Insured owns is not involved in the "accident"; or

(3) Reduced by payments to others injured in the "accident" to an amount which is less than the Limit of Insurance for this coverage.

However, an underinsured motor vehicle does not include a "covered auto" unless the limit of Uninsured Motorists Coverage shown in the Declarations or Schedule is greater than the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations of this policy.

c. For which the insuring or bonding company denies coverage or is or becomes insolvent.

d. That is a hit-and-run vehicle causing "bodily injury" to an "insured" and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is operating.

See Ex. 3, pp. 64, 67-68.

31. The Policy also contains a Form MCS-90 Endorsement to assure compliance with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration. See Ex. 3, p. 78.

32. The Form MCS-90 Endorsement attached to the Policy states as follows: "Such insurance as is afforded, for public liability, does not apply to injury or death of the insured's employees while engaged in the course of their employment." See Ex. 3, p. 78.

## FIRST REQUEST FOR RELIEF – DECLARATORY JUDGMENT
## AS TO UM COVERAGE

33. NCC incorporates by reference paragraphs 1 through 32 of this Complaint as if set forth fully herein.

34. An actual controversy has arisen between NCC and Defendants.

35. Based upon the foregoing facts and Policy language, NCC contends that the Policy does not provide UM coverage for the Accident.

36. Specifically, NCC contends that the vehicle purportedly driven by John Doe (as alleged in Karyn Gurley's complaint) does not qualify as an uninsured motor vehicle under the Policy.

37. NCC believes that there may be other coverage defenses which may be revealed during discovery in this action and, accordingly, incorporates all terms, conditions, exclusions, and other provisions in the Policy as defenses to any claims of coverage by Defendants.

38. Thus, there presently exists a justiciable controversy between the parties as to the rights and obligations of Plaintiff NCC and Defendants. Under 28 U.S.C. § 2201(a), the Court may and should declare the rights of the parties with respect to this controversy.

## SECOND REQUEST FOR RELIEF – DECLARATORY JUDGMENT
## AS TO THE FORM MCS-90 ENDORSEMENT

39. NCC incorporates by reference paragraphs 1 through 38 of this Complaint as if set forth fully herein.

40. An actual controversy has arisen between NCC and Defendants.

41. Based upon the foregoing facts and Policy language, NCC contends that it has no obligations related to the Accident under the Form MCS-90 Endorsement in the Policy because the Form MCS-90 Endorsement does not apply to the injury of the insured's employees.

42. Thus, there presently exists a justiciable controversy between the parties as to the rights and obligations of Plaintiff NCC and Defendants. Under 28 U.S.C. § 2201(a), the Court may and should declare the rights of the parties with respect to this controversy.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff NCC respectfully requests that this Court assume jurisdiction over this cause and enter a declaratory judgment against Defendants as follows:

a. That Plaintiff NCC has no obligation under the Policy to provide uninsured motorist coverage for any claims arising from the Accident.

b. The Plaintiff NCC has no obligation under the Form MCS-90 Endorsement attached to the Policy for any claims arising from the Accident; and

c. That this Court grant such further and different relief as may be appropriate to accomplish justice and equity among the parties.

Respectfully submitted this 23rd day of January, 2020.

Respectfully submitted,

/s/ Michael P. Johnson
MICHAEL P. JOHNSON
NC Bar No.: 30630
MCMICKLE, KUREY & BRANCH, LLP
217 Roswell Street, Suite 200
Alpharetta, GA 30009
Phone: (678) 824-7808
Fax: (678) 824-7801
Email: mjohnson@mkblawfirm.com
*Attorney for Plaintiff*